(Towers *v.* Hagner.)

---

[PHILADELPHIA, JANUARY 2, 1838.]

## TOWERS *against* HAGNER.

1. A married woman having a separate estate may give or lend the income
of it, if at her disposal, to her husband as to any other person.  When
it is uncertain whether money received by such husband was intended as
a gift or a loan, the jury in an action against the husband's executors
may take into consideration among other circumstances, evidence given
to prove that harmony did not always exist between the husband and
wife.
2. Where money has been lent by a wife, having a separate estate, to her
husband, the statute of limitations does not begin to run against the
debt, until the death of the husband.
3. Interest should be allowed on such debt, in an action against the ex-
ecutors of the husband, from the time of his death; and where there
has been coercion or other improper conduct on the part of the husband,
the jury may give interest for the time before his death.
4. Where on the trial of an action against an executor on an alleged as-
sumption of his testator, the defendant's counsel admitted that certain
manuscript account books, offered in evidence by the plaintiff's counsel,
were in the hand-writing of the testator, it was held that this admission
did not estop the counsel from questioning the authenticity of a particu-
lar item, in his address to the jury.
*5. Where an action was referred to arbitrators, under the act of [*49]
1810, and on the trial before the arbitrators the plaintiff was offered
as a witness, having assigned her interest, and the sum of $50 was fixed
by the arbitrators as the amount of costs, and paid by her to one of the

(Towers *v.* Hagner.)

arbitrators, and she was then examined as a witness; but no record was made of the payment of this sum, and the arbitrators found for the plaintiff, with costs; and the money paid by the plaintiff, was applied towards the payment of the arbitrators' fees, and other expenses of the arbitration, but was inadequate for the purpose, and afterwards the plaintiff died; it was *held* that the notes of her testimony before the arbitrators could not be read in evidence on the trial in court, although the full amount of the remaining costs was paid in during such trial.

THIS was an action of assumpsit brought by Mary Towers against Charles Hagner, executor of the will of John Towers, her deceased husband, to recover certain sums of money alleged to have been lent and advanced to the testator in his lifetime, or to have been received by him to her use.

On the trial before Kennedy, J., at the Nisi Prius, in November, 1837, the case appeared to be as follows:

Previously to the marriage of Mrs. Towers with the testator, which took place in 1823, a settlement was made of her property by a conveyance to a trustee, in trust, for her separate use during her life, and after her death, to her children by a former husband named Tucker. Capt. Towers, the intended husband, was a party to this conveyance. The property consisted both of real and personal estate.

Capt. Towers died in May, 1831. This suit was commenced to the December Term following; and was shortly afterwards referred to arbitrators, under the act of Assembly of 1810. While the cause was depending before the arbitrators, Mrs. Towers assigned her interest in the claim to her son, for whose use the action proceeded. She was then offered as a witness; and being objected to on the score of her liability to costs, the arbitrators were asked to fix a sum to be paid by the plaintiff to cover the costs. They fixed $50, which sum was handed by, or on behalf of the plaintiff, to one of the arbitrators; after which she was examined. This sum ultimately turned out to be inadequate for the payment of the costs of the suit. The arbitrator retained the money until the filing of the award, which was in favour of the plaintiff, with costs; upon, or after which, the arbitrator asked the plaintiff's counsel to receive it, and apply it towards the expenses of the arbitration. The plaintiff's counsel accordingly received it, and applied part of it to the payment of the arbitrators' fees, and the remainder towards the expense of the room. The fact of the payment of the $50 during the arbitration, did not appear upon the minutes of the arbitrators, or the records of the court. The defendant appealed from the award. Mrs. Towers died after the appeal, and her executors, [*50] *Henry M. Tucker and William Tucker, were substituted as plaintiffs.

(Towers *v.* Hagner.)

On the trial, the plaintiffs gave parol evidence to show that Captain Towers had obtained money from Mrs. Towers on different occasions, sometimes by violent treatment and severe measures; and it appeared clearly that they lived together very unhappily. Certain MS. cash-books kept by Captain Towers were also produced, containing entries of cash received by him from Mrs. Towers, and also of cash paid to her. The handwriting of Captain Towers to these entries was admitted by the defendant's counsel.

The plaintiff's counsel then offered in evidence his notes of the testimony of Mrs. Towers, taken at the hearing before the arbitrators, and sworn to be the substance of her deposition. This was objected to on the part of the defendant, and the learned Judge rejected it on the ground that it did not appear by the report of the arbitrators, or by the record, that the costs had been paid, and because the money alleged to be deposited to cover the costs, was not paid to the prothonotary, on the filing of the award, or deposited with him, or in court, at any time; but according to the award, the defendant was to pay the costs of suit.

On the part of the defendant, parol evidence was given to rebut the inference that money was obtained by Captain Towers from his wife by duress. Certain entries in cash-books of Captain Towers, which had been produced under a notice from the plaintiffs' counsel, were offered in evidence to prove payments to Mrs. Towers, but objected to on the part of the plaintiffs, and rejected by the Court.

Judge Kennedy charged the jury in substance as follows:

"By marriage, without the intervention of any agreement, the husband acquires a right to the possession of his wife's real estate, and an absolute right of property to all her personal estate, which includes her money, or her right to claim money, so far as he shall possess himself of the same. But although the husband, by the mere operation of law, becomes thus entitled to the money belonging or owing to his wife, as well as her other personal estate—consist of what it may—yet it is competent for the parties, before marriage, by an agreement made between them, usually called an agreement, or articles of marriage-settlement, to make the law otherwise; so that, notwithstanding this marriage in contemplation shall be celebrated and take place, the wife shall continue to be, in effect, the absolute owner of all her estate, both real and personal, and to continue *the same control and power over it, as if she remained [*51] unmarried—and that the husband shall have no right or claim whatever to it, unless she shall give it to him. Whether such agreements be more or less favourable to matrimonial hap-

(Towers *v.* Hagner.)

piness, is not a question which either the court or jury have a right to inquire into, and settle here. It is sufficient to know that the law sanctions and approves of them; and that being the case, it is the duty of courts and juries to carry such agreements into effect, according to their tenor. The husband is just as much bound by such an agreement, as any other that he could legally have made with any other person. Now according to the legal effect of the agreement made between Captain Towers and his wife before marriage, which has been given in evidence to you, Mrs. Towers continued to be the owner in equity of her estate the same after marriage as before. Her husband had no right whatever to her money, nor to the rents or profits of her real estate; all still belonged to her, and she had an unquestionable right to dispose of them as she pleased. She might have given them to a stranger, or to whom she pleased, or she was at liberty to give them to her husband. She had a right also to lend her money to whom she pleased; to her husband if she pleased; and if she did so, he was as much bound to repay it to her, as if he had borrowed it of a stranger. So if Captain Towers received any of her rents without her consent or authority, he would be bound to account for it, and pay it to her. If, however, he received her rents by and with her consent, while they lived together in peace and harmony, and used them without any complaint or objection being made by her for years, the presumption would be, that such rents, so received, were a gift from her to him; and if so, his estate would not be accountable. This same rule would also apply to the receipt of interest on money belonging to her, and standing out upon loan; but if he had collected or received the principal, or any portion of it, though with her knowledge, no presumption of its being a gift would arise from that circumstance. It ought to appear distinctly that she had assented to his receiving the principal as a gift; otherwise he would be liable for it. With the exception, however, of $60 received of David M'Clure, it does not appear from the evidence, that he ever received any rents belonging to his wife, nor at any time interest or money due her. If this $60, received of M'Clure, was Mrs. Towers's rent, and she was acquainted with his having received it, and acquiesced in it, without any complaint or objection, while at the same time she was living in peace with him, the presumption would be that she was content that he should have it as a gift. There is certainly no evidence given going to show that she was opposed to it, but whether she was living with him on good and harmonious terms or not, you will judge from the evidence; for it would seem if the evidence is to be accredited, that harmony did not always prevail. From the evidence it would

(Towers *v.* Hagner.)

appear that the only moneys beside the *rent which Cap-    [*52]
tain Towers received, belonging to his wife, were received
from herself, or her own hand. ⁎The chief, if not the only evi-
dence of these moneys being advanced or lent, with the exception
of the $100, is derived from the entries made by Captain Towers
himself in his cash-books, which have been exhibited, and ex-
plained and commented on very minutely by the counsel on both
sides.   In some of the entries, the money set down is expressly
mentioned as borrowed.   When this is the case, it must be taken
as borrowed, because it is so denominated by Captain Towers
himself.   In other entries, however, she is simply credited with
so much cash as is mentioned, received by him of her.   It has
been argued that this difference in the entries tends to show that
when he received the money on loan, it is stated to have been
borrowed; but when he received it as a gift, he had simply
credited her with it, without saying more.   It may be observed,
that in no instance has he expressly stated the money to have
been received as a gift from his wife—and what at once seems to
militate with his having intended to enter the money received
from his wife as a gift, is, the fact of his having credited her with
some small items, which he afterwards marked *paid*, while the
other charges against himself, entered previously in the same
form, still remain without being marked *paid*.   It is clear, that
if the credit merely of money received by Captain Towers of his
wife, had been intended to indicate a gift by her to him, his
marking any of them *paid* afterwards, was incompatible with
such intention, and could not, consistently with such intention,
have been.   I therefore think that there is nothing in the form
of entries, which goes to prove that the moneys received by Cap-
tain Towers of his wife, were received as gifts, and not as loans.
The item of $940, which has been much commented upon, it must
be observed, was read to you as being in the handwriting of Cap-
tain Towers as well as the others, without any objection; and
although the fact of its being wholly in the proper hand of Cap-
tain Towers is not directly denied, yet a course of observation
has been pursued, to show that it may well be doubted.   It would
have been better, had the counsel for the defendant apprised
the counsel for the plaintiff of their doubts as to this, so as to
have afforded them the chance of proving that the figures "940,"
as well as the rest of the items, were in the handwriting of Cap-
tain Towers.   This ought to have been done, for if the plaintiff
had witnesses in attendance to prove the fact, the defendant's
counsel, by permitting the entry to be read without objection,
hesitation or remark, may themselves have thrown the plaintiff
off his guard, and induced him to dispense with calling his wit-
nesses, while they were here.   Under this view, the defendant is

(Towers *v.* Hagner.)

too late in objecting to the entry, as not having been made by Captain Towers himself. It has also been objected by the defendant's counsel, that the mere entry in the book of a man, (as in page 17,) charging himself with money, without the production [*53] of his *other books, containing subsequent entries which may be explanatory, or have a bearing on the item of charge, is not sufficient to charge his estate; and to this effect the Court has been requested to charge the jury, as matter of law. The entry of a charge by a man in his book against himself, would certainly be as strong and as good evidence against him, as his mere verbal admissions, which might be given in evidence, and might be considered sufficient by the jury to charge him with the amount. The whole of the admission, or the entry, however, must be taken together, and go to the jury; so that, if the part seeming to import a charge, be explained by what follows, the jury may look at the whole, and give such credit and effect to it, when thus received, as they shall think it entitled to. But declarations made at a subsequent period, explaining or doing away the effect of a prior verbal admission, cannot be received, and permitted to go as evidence to the jury. I, however, am not inclined to think that all entries made in a book, by the owner thereof, subsequently to that of the charge, should be rejected; for a subsequent entry, stating the previous charge to be paid, may, upon the principle of an answer by a respondent in chancery, be received, and go to the jury in connexion with the charge, because it has a direct reference to it. Such subsequent entry, however, must appear to have been made before suit brought, and, indeed, before it shall appear that the dispute arose between the parties—so that there may be no ground to suppose that it was made to serve the party, or meet the occasion, without regard to its truth. But here it may be further answered, that if there be other books in existence, which would have cast any light on the entries now in evidence, why were they not produced? It certainly does not appear that any such have been withheld by the plaintiff, or that he is in fault in regard to them. If it be known to the defendant that such exist, it was his place to have produced them. The statute of limitation is also set up as a bar to the plaintiff's demand, or at least to a large part of it. In claims like the present, if the plaintiff neglect for the space of six years after his right of action has accrued, to bring a suit for it, the statute of limitation, if pleaded, will be a bar to it, unless he be under some disability, provided in the saving clause of the statute, which is in no wise applicable to the present case. But it is clear, that until the plaintiff has acquired a right to maintain a suit, the statute does not begin to run. The question then arises here, if the wife of Captain Towers ever had a

(Towers *v.* Hagner.)

good cause of action, when did she first acquire a right to sue for it? According to the settled law of Pennsylvania, a wife cannot maintain a suit against her husband for such cause of action as that for which suit was brought. They are considered as forming but one person in law, and therefore it is that she could not maintain an action against him, nor even against a stranger, without her husband being joined with her as plaintiff; when, if the money recovered *were to be for her separate use, the court might appoint a receiver. This being the law of [\*54] the state, Mrs. Towers could maintain no action for the money in question, supposing it to have been borrowed by him of her, during her coverture, which continued until his death. But it is contended that if the moneys claimed here were actually lent, and not repaid according to the terms of the agreement or understanding between the parties, she might have sued for them through her trustee. But it would seem from the evidence, if the moneys claimed were lent at all, they were lent by Mrs. Towers herself to her husband, and not by her trustee, who does not appear to have had any connexion with, or knowledge of the matter in any way whatever. When the money came into her hands, either from the trustee himself, or by and with his consent, she had a right to dispose of it as she pleased, and his power over it as a trustee may be considered as discharged. She therefore might have lent it to her husband, or any body else that she pleased. It is true, she might if she had pleased, have lent the money to her husband, and have taken from him a security for the payment of it, in the name of her trustee, or some friend, who would have been willing to stand in that character : and in case of failure to pay, suit might have been brought in the name of the obligee or payee mentioned in the security. But she was not bound to adopt this mode, in order to render the husband, or his estate, after his decease, liable for the repayment of the money. Seeing that the money, if lent, was lent by Mrs. Towers herself to her husband, upon his undertaking simply to pay her, the trustee could maintain no action for the recovery of it; nor could a suit have been supported for it in the name of any one, except herself. But she being incapable of suing her husband, or of maintaining a suit in any way against his estate for the recovery of the money during the continuance of his lifetime, the statute of limitation did not begin to run until after his death; and this suit being commenced in less than six years afterwards, the statute presents no bar to the plaintiff's recovery. Then as to the plea of payment.—No evidence of a direct payment of any of the items claimed has been given. The lapse of time, however, and the circumstance of no complaint ever having been made by Mrs. Towers, until after the death of her husband,

that he had not paid her, or was delinquent in doing so, has been relied on, as tending to prove that she must have been paid or satisfied by him in his lifetime. Although it does not appear that she ever asked him for .payment, or complained that he had not paid her, yet according to some of the evidence it would seem that he was often in want of money, and displeased with her, because she would not let him have money. This perhaps would rather tend to repel the presumption of payment that might otherwise arise from her silence on this point. But the circumstance of his having marked the small item of a dollar and forty cents, credited to her in his cash-book, "paid," [*55] *while the larger items, now claimed, remain without any such mark, would seem to show that if he had paid them, he would have so marked them. For why should he mark a small sum "paid," and leave the larger and much more important ones without being so noted, if they had in fact been paid by him. If you should be of opinion that Mrs. Towers lent money to her husband which has not been repaid, you ought to allow interest on it from the time of his death to the present time. Whether the plaintiff ought to be allowed interest from the time of lending the money to the death of Captain Towers, I leave entirely with you, to allow it or not, according to your own discretion. I would say, however, that I think it ought not to be allowed, if you should be of opinion that they lived together on good terms during the coverture, and that no interest was ever demanded or paid, because it might be fairly presumed, that she intended he should have the use of the money without interest."

The jury found for the plaintiffs the sum of $2012 64.

The plaintiffs and defendant each moved for a new trial.

The plaintiffs' counsel filed the following reasons.

"1. The Court erred.

(1) In not permitting the plaintiffs to give evidence of what Mrs. Towers had testified before the arbitrators.

(2) In the charge on the subject of the plaintiff's claim for interest accrued during Mr. Towers's lifetime.

2. The jury erred in finding for the plaintiffs a less sum than upon the evidence adduced, and under the charge ought to have been found.

3. In point of amount, the verdict was against law, evidence and the charge."

The defendant's counsel assigned the following reasons for a new trial.

"1. Because the Judge erred in charging that the terms on which Mr. and Mrs. Towers lived together, were, as they appeared in evidence, such as to require the jury to infer, or to

(Towers v. Hagner.)

justify them in inferring against the amount of her rent received by him of David M'Clure, being a gift from her to him.

2. Because the jury erred in making such inference.

3. Because the Judge erred in charging the jury that there was nothing in the form of the entries which went to prove that the *moneys received by Captain Towers of his wife, were received as gifts, and not as loans.    [*56]

4. Because the Judge erred in charging that the item, $940, having been read to the jury as in the handwriting of the deceased John Towers, without objection by the counsel of the defendant, they were not at liberty afterwards to question its verity.

5. Because the Judge erred in refusing to permit the counsel of the defendant to comment to the jury upon items or entries in the account-book given in evidence, unless the very items or entries had been severally read in evidence to the jury on the part of the plaintiffs.

6. Because a certain collection of half-sheets of paper was given in evidence without objection, which purported to contain certain writings and figures only in the handwriting of the defendant's testator. During the progress of the trial, the face of the papers exhibited appearances which the counsel for the defendant urged to the jury were calculated to excite reasonable doubts of the genuineness of one of the items. Yet the learned Judge charged the jury that no objection of that character could then be taken.

7. Because memoranda, made in one or more of a series of books or consecutive papers were admitted to charge the deceased with liabilities, while other books or papers in the same series were not produced, or when produced, rejected.

8. Because the Judge erred in refusing to permit the counsel of the defendant to give in evidence certain entries in the cash-book No. 1; many entries in the same having been given in evidence by the plaintiff's counsel.

9. Because the Judge erred in refusing to permit the cash-book No. 2, to be read in evidence by the defendant.

10. Because the jury erred in allowing to the plaintiff the $940, and interest.

11. Because the Judge erred in ruling that the plaintiffs had not withheld books or papers from the jury, and that the jury should not consider the plaintiffs in fault, as to the non-production thereof.

12. Because the Judge erred in ruling the statute of limitations to be no bar to the plaintiff's claim, or any part thereof.

13. Because the Judge erred in charging that the jury might allow interest to the plaintiff during the life of Captain Towers.

14. Because the jury erred in allowing the same.

(Towers *v.* Hagner.)

15. Because the verdict was against law, evidence, and the charge."

[*57]    *Mr. Cadwalader* for the plaintiffs cited *Stanning* v. *Stiles,* (3 P. Wms. 337); ' *Dougherty* v. *Snyder,* (15 Serg. & Rawle, 83); *Starret* v. *Wynn,* (17 Serg. & Rawle, 133); *Regner* v. *Lewis,* (1 Ch. Cases, 35); *Berry* v. *Carr,* (3 Mad. Rep. 472); Mitford, 28; *Digby* v. *Howard,* (4 Simon, 578); *Wormley* v. *Wormley,* (8 Wheat. 451); *Saunders* v. *Beale,* (2 Vern. 63); *M' Glinsey's Appeal,* (14 Serg. & Rawle, 60); *Murray* v. *East India Co.* (5 Barn. & Ald. 204; 7 Eng. Com. Law Rep. 66); *Richards* v. *Richards,* (2 Barn. & Adolph, 447; 22 Eng. Com. Law Rep. 119); *Cage* v. *Acton,* (1 Ld. Raym. 515); *Milbourn* v. *Ewart,* (5 Term Rep. 381); *Hoak* v. *Hoak,* (5 Watts, 81); *Campbell* v. *Galbraith,* (5 Watts, 424); *Chess* v. *Chess,* (17 Serg. & Rawle, 409); *Withers* v. *Gillespy,* (7 Serg. & Rawle, 14, 15).

Mr. *C. Ingersoll* and Mr. *J. R. Ingersoll* for the defendants, cited *Willing* v. *Consequa,* (1 Peters's C. C. Rep. 307, 8); *Steele* v. *Phœnix Ins. Co.* (3 Binn. 311); *Pawlet* v. *Delaval,* (2 Ves. jun. 668); *Yohe* v. *Barnet,* (1 Binn. 363).

The opinion of the Court was delivered by

ROGERS, J.—This was an action on the case, brought by Mary Towers against the executors of her deceased husband, John Towers, to recover money lent to him during the coverture. Mr. Justice Kennedy charged the jury, that by the marriage, without the intervention of an agreement, the husband acquired an absolute right to the possession of his wife's real estate, and an absolute right of property to all her personal estate, including her money, or right to claim money reduced into possession. But although the husband, by the mere operation of law, became entitled to all her property, whether in possession or a chose in action, yet, that the parties, before marriage, may, by articles of marriage settlement, alter the law, so that notwithstanding the marriage, she may act in respect of her separate estate as if she were a *feme sole.* According to the legal effect of the agreement between Towers and his wife, before marriage, Mrs. Towers continued the owner, in equity, of her estate, as if no marriage had taken place. Her husband had no right whatever to her money, nor to the rents and profits of her real estate. She had a right to dispose of them as she pleased, either by gift or loan, as well to her husband as to a stranger; and that, if lent to the former, he was as much bound to repay her, as the latter. If Captain Towers received any of her rents, without her consent or autho-

(Towers *v*. Hagner.)

rity, he was bound to account for them; but if he received them with her consent, without any complaint or objection being made, the presumption would be that they were a gift from her to him. *Earl Digby* v. *Howard*, (6 Eng. Com. Law Rep. 273). To the general principles contained in the direction, neither party can take any just exception; nor is there any thing in the *particular exception to this part of the charge. We do [*58] not understand Mr. Justice Kennedy to have ruled that the single fact, that harmony did not always exist between Captain Towers and his wife, would, of itself, render his estate liable, but that, among other circumstances, might be taken into consideration by the jury, in determining the material question, whether the various items given in evidence, were gifts or loans. The chief evidence of the plaintiff is derived from entries made by Captain Towers himself. In some of the entries, the money is expressly entered as *borrowed*; and when this is the case, the judge ruled it as a matter of law, in which direction we concur, that it must be taken as borrowed, because it is so denominated; but in all other entries, where she is simply credited with so much cash, the question whether it is a loan or a gift, must be left to the decision of the jury. Neither party have any just cause of complaint on account of the remarks of the judge on this part of the case; for we concur with him in the opinion, that there is nothing in the form of the entries, which proves that the money was received as gifts, and not as loans.*

The counsel for the defendants except to that part of the charge, which relates to the item of $940. A misdirection in relation to this, which was the principal item in the account, will undoubtedly entitle the defendant to a new trial. "The item of $940," say the Court, "has been much commented upon; and this, it must be observed, was read to you as being in the handwriting of Captain Towers, without any objection; and although the fact of its being wholly in his proper handwriting was not directly denied, yet a course of observation has been pursued, to show that it may be well doubted. It would have been better had the counsel for the defendant apprised the counsel for the plaintiff of their doubts as to this, so as to have afforded them the chance of proving that the figures, $940, as well as the rest of the item, were in his handwriting. If the plaintiff had witnesses in attendance to prove the fact, the defendant's counsel, by permitting the entry to be read, without objection, hesitation or remark, may, themselves, have thrown the plaintiff off his guard, and induced him to dispense with calling his witnesses.

* See 11 Harris, 462; 7 Casey, 452; 9 Wright, 533; 14 Id. 138; 10 P. F. Smith, 415.

(Towers *v.* Hagner.)

*Under this view, the defendant is too late in objecting to the entry, as not having been made by Captain Towers."* In this conclusion, we are of the opinion, the Court was in error. The defendant cannot be said to have expressly admitted that the entries were in the handwriting of Captain Towers; but for the purpose of avoiding expense, and giving the party unnecessary · trouble, they agree to dispense with the preliminary proof, which it would otherwise have been incumbent on the plaintiff to give, before the evidence could be received. But the Court would seem to have put it on the ground of an admission, which amounts to an estoppel; and this the facts do not warrant. But if the case be viewed as dispensing merely with the ordinary proof of handwriting, there is no *principle of law or policy which precludes the party from showing, either from external or internal evidence, that one, or all the items of a complicated and intricate account, are forgeries or erasures; or, from some other cause, are not properly the grounds of charge. In the course of the remarks of the counsel, they endeavoured to show, that the face of the papers exhibited appearances which were calculated to excite reasonable doubts of the genuineness of this item. Whether they succeeded in this, or not, is not for us to say. It is sufficient, that by the positive direction of the Court, the defendant was, in effect, precluded from going into the inquiry. If it should be ruled, that whenever a party dispenses with proof of handwriting, he is prevented from an investigation of the truth of the facts, whatever internal evidence there may be of improper conduct, there will be an end of a practice, so worthy of imitation, which has obtained in this part of the state, so correct and proper in itself, and which is attended with such obvious conveniences to counsel and suitors. We are of the opinion that the justice of the case required that it should have been left as an open question of fact, to be decided by the jury; or if there was an allegation of surprise, a juror should have been withdrawn, so as to have given an opportunity for a more deliberate examination of this part of the account. But independently of the strict legal objection to the charge, there is a reasonable doubt whether justice has been done; and for this reason, connected with the peculiar circumstances which attended the trial, we think that the cause ought to be committed to another jury.

The opinion of the Court on the last point, would answer the defendant's purpose, but there are other exceptions which have been pressed upon the Court, and which it may be proper briefly to notice. The defendant's counsel have no just ground of exception to the direction as to the entries in the books. There is no evidence to show that any books were withheld by the plain-

(Towers *v.* Hagner.)

tiff.   The presumption is, that the books which were alleged to be withheld, were in the possession of the executor; nor is this presumption rebutted by the fact, that the will was not proved until one month after the death of the defendant.   The presumption is, notwithstanding, that he has the possession of all the testator's papers; and there was nothing in evidence, which raised a reasonable ground of suspicion, that the plaintiff had any books or documents, except those which were produced.   And the same may be said as to the objection, that the judge refused to permit the counsel for the defendant to give in evidence certain entries in the cash book.   The law is correctly stated in *Withers* v. *Gillespy*, (7 Serg. & Rawle, 10.)   Where books are produced, on notice, and entries read in evidence by the party calling for them, the party producing them may read other entries, *necessarily* connected with the same entries, if made prior to the commencement of the suit.   And if the party producing them may, *then the opposite party may do so also.   But the item [*60] offered was not necessarily connected with the entries which had been given in evidence.   It might have been used as an argument, bearing upon other entries; but this of itself does not bring it within the principle of the case cited, and which rules the point.

It remains now to notice the exception of the defendant to the charge on the statute of limitations.   This point depends on the question when the right of action accrued; for until then, in those cases where the remedy is suspended, the statute does not begin to run.   Although the debt existed at the time of the loan, yet the remedy was postponed until the death of the husband. In Pennsylvania, a wife cannot sue her husband, nor can she maintain a suit, except, perhaps, as a *feme sole* trader, against a stranger, without joining her husband.   In contemplation of law, the wife is scarcely considered to have a separate existence: she and her husband constitute but one person, and all the rights and duties which are hers at the period of the marriage, become his during the continuance of that union.   This unity of the persons of the husband and wife, is the source from which her disability to maintain suit is derived.   The separate property of the wife was vested in trustees by the marriage settlement; but the money, for which the suit was brought, was received by her from the rents of the property, and paid to her as income.   It was money, over which the trustees had no control, and for which they could not maintain an action.   If we should rule that the statute bars this suit, it would, in effect, deprive wives of all remedy, when they had made a direct loan of money, derived from their separate property, to their husbands.

(Towers *v*. Hagner.)

The plaintiff has also filed several reasons for a new trial, two of which only it is material to notice.

The exception on which he principally relies, is the exclusion of the testimony of Mary Towers.  Mary Towers, who was the original plaintiff, now deceased, assigned all her interest to her son, for whose use the action was tried.  She was offered as a witness at the arbitration; and being objected to, the sum of $50 was paid to Mr. Norbury, one of the arbitrators, to cover costs. There is some difference between the counsel whether this amount was fixed by the arbitrators, or by the plaintiff's counsel; but for the purpose of this case, we shall take it to have been fixed by the arbitrators.  After this, she was examined as a witness. The notes of counsel, proved to contain the whole of her testimony, were offered in evidence.  The $50 ultimately proved inadequate to cover the costs of the suit.  The arbitrator retained the money until the filing of the award, and then asked the plaintiff's counsel to receive it, and apply it towards the expenses of the arbitration.  He received it accordingly, and applied $39 to the payment of the arbitrator's fees, and the remainder towards room-hire.  The full amount of the remaining costs was paid into court, during the trial.  The fact of *the payment of the $50 did not appear on the records of the Court.

[*61]

The Court were right in rejecting the evidence, on several grounds.  Because the costs should have been paid to the prothonotary, the arbitrator having no right to receive them; because although the arbitrators may have fixed the amount, yet it afterwards turned out to be entirely inadequate to the payment of costs; and because the payment did not appear on the records of the court.  It is well settled, that where the interest of a party on record is entirely divested by an assignment, and by payment of a sum of money, sufficient to pay all costs which have, or may accrue, the witness is competent.*  But the payment of all costs is indispensable; for where a scintilla of interest remains, it is but serving the ends of justice, to exclude the witness.  And here it must be remarked, that the opinion of the witness as to his interest, cannot affect his competency.  It is the fact of interest at the time the witness is sworn, that is a criterion of competency.  If the facts had been known, Mrs. Towers's testimony would have been excluded; for at the time of her examination she was clearly interested.  The person who wishes the benefit of such testimony, must take the risk on himself, in paying an amount sufficient to cover all costs; and where it is not done, in case of death, he has no right to complain, that the evidence has not been received.  We are also of the opinion, as has been before

* See cases cited, *post* 347.

intimated, that the arbitrator had no right to receive the costs, but that they should have been paid to the prothonotary; and also that the evidence was properly excluded, for the reasons assigned by Mr. Justice Kennedy, that the payment of the costs did not appear on the record. This case is but a sample of the difficulties in which we should be involved, if the fact of payment depended on parol evidence, which is often contradictory and uncertain.

As the cause goes back to another jury, it is necessary to notice the charge in relation to interest. The jury were instructed to allow interest on the money lent, from the time of the death of the husband. But whether the plaintiff should have interest until the death of Captain Towers, was left to the discretion of the jury, with, however, a strong intimation, that if the jury believed the parties lived together on good terms, during the coverture, and no interest was ever demanded, interest ought not to be allowed. In an ordinary case of loan, by a wife to her husband, of her separate estate, independent of contract, interest ought not to be given; because, usually, it would not enter into the contemplation of either party. But when coercion was used, or there was any impropriety of conduct on the part of the husband in obtaining the money, the jury would be justified in giving interest. The jury were, in substance, so instructed, and in this we perceive no error.

New trial awarded.

Cited by Counsel, 5 Wharton, 122, 141; 8 Watts, 15; 4 Watts & Sergeant, 547; 1 Barr, 328; 7 Casey, 452; 9 Id. 526; 14 Wright, 379; 1 P. F. Smith, 73; 2 Id. 412; 5 Id. 417.

Cited by the Court below, 8 Wright, 173.

Cited by the Court, 4 Wharton, 453; 7 Barr, 204; 4 Wright, 94; 11 Wright, 310; 14 Id. 386.