*Orphans' Court, Dauphin County, January 13th, 1863.*

## In the Matter of Mitchel's Estate.

An executor, having sold property of the decedent, must be charged with the price mentioned in his deed.

Claims for sums of money lent by the wife to the husband in his lifetime, may be demanded before an auditor upon his executor's account.

The Orphans' Court has no power to open an executor's account, in order to let in the widow's claim for three hundred dollars; her only remedy is by an action against the executor.

A wife may lend money to her husband, and sue his executors for it after his death; the statute of limitations does not run during the coverture.

By the Court.—This case comes before us in the form of a bill of review presented by the widow of George Mitchel, asking for a reinvestigation of the account filed by the executors; and after the whole complaint has been fully heard, there is but one error either pointed out or established, requiring the account to be opened and reviewed, in order to do complete justice to all parties.

It seems that the executors sold land, and instead of charging themselves with the whole proceeds of the sale, eighty dollars, as evidenced by their deed, debited themselves with only sixty dollars. The payment was not made in cash; but a horse was delivered and accepted. There is some dispute as to the value of the animal, but we are of the opinion that the executors should be charged according to what they stated in their deed. The claims for sums of money lent by the wife to the husband in his lifetime were proper subjects for investigation in a court of law before a jury, and the administration account need not be opened to let them in. For a long series of years the Supreme Court held that all disputed claims *must* be so established. It has latterly decided that they may be presented before an auditor, or sued in a court of law at the option of the holder. The sooner claimants are thrown on the ordinary tribunals of the country to establish their right to recover debts from the estates of decedents, the same as against living parties, the better it will be for the cause

[In the Matter of Mitchel's Estate.]

of justice, the safety of estates, and the uniformity of the law. My individual opinion is, that there is not the slightest sanction in the law for establishing such claims before an auditor; but in this, as in every other case, I bow to the sanctity of decision.

There is no right or power in the Orphans' Court to open the settled account to let in the widow's claim under the three hundred dollar law. If she has any remedy against the executors for neglecting to set apart or refusing to allow her that fund, it is by a special action on the case, and not by claiming it on settlement of the administration accounts, except when she is herself the executor.

As the account must be opened to correct the land transactions, and the parties have already had a full hearing of the pecuniary claims, we will proceed to decide them. We are of the opinion that the auditor came to a reasonably correct conclusion as to the sum of $240, as nearly correct as such a matter is susceptible of at so distant a period from the time of the transaction. He was quite as likely to *guess* right as a jury. That sum will be allowed, but without interest. It is clearly settled in Pennsylvania, that a husband may borrow money from his wife, and that his estate is bound to repay it. An action will lie on such a contract by the wife against her husband's administrator, or by her administrator against him, though no suit could be sustained during the lifetime of both, and the statute of limitations does not run during the coverture (Towers *v.* Hagner, 3 Wh. 48, and the cases there cited with many others since).

The deceased also received $333.17 through his wife, which came to her in right of her deceased son, John Wilson. This money was raised by a sale of John Wilson's interest in land, which had descended from his father, and in which his mother had a life estate. The land was converted into money after her son's death; consequently came to her as *land*, in which her husband, Mitchel, had an interest as tenant by the curtesy initiate.

The widow of Mitchel is entitled to recover the interest on that money from the time of her husband's death, so long as she may live, but from anything disclosed, she is not now and never was entitled to the principal. It must go to the next of kin to her son, *ex parte*, as the land would have gone. As the husband was entitled, in right of his wife, to the life estate so long as he lived, his promise to pay interest, even if proved, could not be binding; but his interest in the money ceased on his death, and from that time the widow is entitled to recover interest during her life, and the executors must take care that the principal is properly secured to the next of kin of John Wilson, deceased.

There is no pretence of claim to the residue of the $300, if the facts are truly stated in the auditor's report. If she has any remedy, it is by a special action on the case.

[In the Matter of Snyder's Estate.]

This matter is referred back to the auditor to state the account on the principles indicated, and correct the settlement heretofore made, so that by a simple decree of confirmation of the report the whole business will be closed. The costs of the audit must be paid out of the estate.