## Lahr's Appeal.

| 90 | 507 |
| 126 | 476 |

| 90 | 507 |
| 174 | 413 |

| 90 | 507 |
| 177 | 173 |

| 90 | 507 |
| 188 | 508 |

| 90 | 507 |
| 200 | 142 |

1. An unrecorded mortgage can take nothing as against judgments in point of law, nor is it entitled to any preference in equity. If it is it must be by bringing home to the owners of the judgments actual notice of the existence of the unrecorded mortgage, not only before their respective liens attached, but before the debts on which they are founded were contracted.

2. An honest judgment voluntarily given by a husband to secure a debt owing to his wife, is just in law. For the prevention of fraud, clear and satisfactory proof of a wife's claim against her husband is exacted in a degree not required of others; but when established she is entitled as another would be.

3. In the distribution of the proceeds of a sheriff's sale of real estate, a judgment ought not to be prejudiced by costs accrued on a posterior lien, which was unnecessary to sale. Costs on writs set aside for cause or consent where a creditor is not in fault or consenting, cannot be paid out of money belonging to said creditor.

4. The rights and disabilities of married women and the respective rights of property of husband and wife, discussed by TRUNKEY, J.

June 10th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Appeal from the Court of Common Pleas of *Northumberland county*: Of May Term 1879, No. 112.

Appeal of Elias Lahr, trustee of Harriet Burns, from the decree of the court confirming the report of the auditor to distribute the fund arising from the sheriff's sale of certain real estate, sold as the property of Andrew Burns.

On the 18th of February 1871, Andrew Burns purchased a lot of ground from S. L. Murray. The deed was acknowledged on the same day. On the 23d of February 1871, Burns and Harriet his wife, by assignment on the back of this deed, duly acknowledged, assigned all their interest to the lot of ground described in the deed to "The Mutual Building and Saving Fund Association of Milton." The deed and assignment were duly recorded on the 25th of February 1871. On the 23d of February 1871, being the day the assignment was made, the said association executed through their president and secretary, under the seal of the association, a separate defeasance declaring that the lot of ground mentioned in the deed, was held as collateral security for a loan of $800 to said Andrew Burns, and that upon the repayment of that sum the association agreed to reconvey to said Burns. The defeasance was not recorded. On the same day the assignment of the deed was made to the association, Burns executed a note with warrant of attorney to enter judgment. Judgment was entered thereon the 13th of October 1876.

This judgment was in favor of Elias Lahr, as trustee for Harriet Burns for $498. Prior to this judgment, three others for small amounts had been entered against Burns, and subsequent thereto, these were there others, including that of the building association.

[Lahr's Appeal.]

The association issued a fi. fa. on their judgment October 9th 1876, in the præcipe for which the sheriff was directed to levy upon the house and lot belonging to Burns. The sheriff did levy upon the house and lot of ground, and advertised and sold the same to the association for $50. This sale was set aside, because there was no waiver of inquisition.

On the 17th of November 1876, an alias fi. fa. was issued to January Term 1877, by the association on their judgment. The sheriff made a levy on the same property again. An inquisition was held, and the real estate levied upon condemned. These proceedings were also set aside, on the ground that the judgment upon which the writ issued was a conditional one, and that there was not a suggestion filed by the plaintiffs, or their attorney, that default had been made by the defendant, &c. On the 22d of January 1877, a pluries writ of fi. fa. was issued by said association. The same lot of ground was again levied upon and condemned. On the 8th of May 1877, a venditioni exponas was issued on the association judgment, and the property sold to the association for $750. The association refused to comply with the conditions of sale, and the sheriff returned the property unsold.

On the 10th of July 1877, an alias writ of venditioni exponas issued on the judgment of the association. At this sale, Elias Lahr became the purchaser, at the price or sum of $650. He was the owner, at the time of the sale, of all the judgments entered prior to that in which he was trustee for Mrs. Burns. The sheriff made a special return at the instance of Elias Lahr, the purchaser. From that return it appeared that the sheriff retained the following costs: Attorney $4.25; crier, 15c.; prothonotary, $8.65, and $21.45 costs of sale, and $10 on account of former sheriff's costs, amounting, in aggregate, to the sum of $44.50. That sum was paid to the sheriff by the purchaser. The balance of the purchase-money was claimed by the purchaser as the first lien-creditor on the judgments he had purchased which preceded the Lahr judgment. The fund was referred to an auditor for distribution.

The association contended that the judgment of Lahr, trustee of Harriet Burns, was not entitled to participate in the distribution, on the ground that Mrs. Burns was a party to the assignment of the deed to said association. That position was maintained by the auditor, and the judgment disallowed.

The association also contended that they were entitled to all the costs on the writ. The purchaser denied that, and argued that, inasmuch as the judgment upon which the sale was made was not reached by the distribution, the plaintiff could not collect any of the costs made upon prior fruitless efforts to bring about the sale, that none but the actual costs to effect the sale could be paid. The auditor ruled this proposition against the purchaser.

Exceptions were filed to this report, which the court dismissed, and confirmed the report. Lahr took this appeal, and alleged, inter alia, that the court erred in ruling that the auditor was right in postponing the judgment of Elias Lahr, trustee, to the mortgage of the association, and in allowing costs other than the actual costs to effect the sale.

*S. B. Boyer*, for appellant.—The auditor found that the consideration for the judgment-note in trust for Mrs. Burns, was for money loaned by her to her husband some ten or eleven years theretofore. This claim of Mrs. Burns, antedated by two or three years any business transaction between the association and Burns. The auditor ruled the case upon the authority of Britton's Appeal, 9 Wright 172, and Bank *v.* Bank, 7 W. & S. 335. In these cases the debt was posterior to the unrecorded mortgage, and the judgment-creditors had actual notice of the true state of the case before the debt was contracted, whilst in the case under consideration, the debt of Mrs. Burns was at least three years anterior to the date of the unrecorded mortgage. The appellants contend that the plaintiff in a judgment, not reached in a distribution of the proceeds of real estate, is not entitled to any costs, excepting the actual costs to effect the sale; that the costs incurred upon prior fruitless efforts to bring about this sale cannot be allowed to affect a lien-creditor: Fry's Appeal, 26 P. F. Smith 82.

*John McCleery*, for appellee.—The mortgage was put upon record as a deed. Six years afterwards, Mrs. Burns obtained from her husband a confession of judgment, which she recorded. This might be of advantage to one who had no notice, whereas, she had full notice of this unrecorded mortgage. By joining her husband in the deed, she occupied the position of mortgagor, and was not protected. The allowance as to the costs was correct.

Mr. Justice Trunkey delivered the opinion of the court, June 23d 1879.

Speaking of the judgments against Andrew Burns, the auditor says: "They are the first and only liens of record, and in point of law are entitled to the proceeds of sale. The unrecorded mortgage of the building association can take nothing as against these liens in point of law. Nor is it entitled to any preference in equity. If it is, it must be by bringing home to these several plaintiffs actual notice of the existence of this unrecorded mortgage, not only before their respective liens attached, but before the debts upon which they are founded were contracted by Burns." This principle, governing the distribution, has been uniformly held by the courts,

from Semple *v.* Burd, 7 S. & R. 286, to Corpman *v.* Baccastow, 3 Norris 363.

In Britton's Appeal, 9 Wright 127, it was decided that a mortgage, executed before, but not recorded until after, judgments had been entered against the mortgagor, is entitled to priority over them in the distribution, when the judgment-creditors had actual knowledge of the mortgage before the debts were contracted for which their judgments were obtained.    The fact of such knowledge was emphasized by Justice STRONG.    His reasoning places him who gives credit and takes judgment after notice of the mortgage on the footing of a purchaser with notice, and does not apply to one· who gave credit without notice or knowledge.    As respects the latter, the ruling of the auditor is a reflex of the professional understanding, as expressed in the phrase, "such mortgage is good against a judgment-creditor with notice before his debt was contracted," repeated as late as McLaughlin *v.* Ihmsen, 4 Norris 364.    No equitable principle demands postponement where the credit was given prior to the mortgage or the creditor's knowledge thereof.    Then he stands as clear of wrong as an innocent purchaser, and his judgment, though entered after knowledge of the mortgage, will take as the first lien.    The reason for postponement where credit is given with notice or knowledge, is the same as applies to a purchaser under like circumstances, namely, that if he seeks to defeat the estate of the mortgagee he is guilty of fraud, but when the credit is given before, the element of fraud in contracting the debt is wanting.    It matters not that the creditor was present at the execution of the mortgage and was silent.    That will not preclude his use of lawful remedies, nor give the ·mortgagee a superior equity.    Creditors are equal in merit and the law favors the vigilant.    Where a debtor gives one a .mortgage, and another, whose contract was prior, a judgment-note, the latter, if first entered of record, is the prior equitable as well as legal lien.

Burns's wife joined in the mortgage and undoubtedly knew the contents of both its parts and of the accompanying bond.    About five years thereafter, he gave a judgment note to Elias Lahr for her use.    The auditor finds the consideration ·of that note was money she got from her father's estate, ten or eleven years ago, which she loaned to her husband, taking no security for it until this judgment was given.    Hence, at the date of the mortgage, this debt had run a little over three years.    To characterize it as a "stale debt," "barred by the Statute of Limitations before the unrecorded mortgage was executed," ill accords with the fact found, or the law.    The Statute of Limitations does not begin to run against a married woman, on a loan to her husband, till his death: Towers *v.* Hagner, 3 Whart. 48; Kutz's Appeal, 4 Wright 90.

Over thirty years ago it was enacted that "'all property, of whatever name or kind, which shall accrue to any married woman during

coverture, by will, descent, deed of conveyance or otherwise, shall be owned, used and enjoyed by such married woman as her own separate property." The husband is sometimes slow to comprehend the full extent of this innovation on rights he formerly enjoyed, and so are his creditors. The statute does not disturb the relation of husband and wife—a union of two persons—but to some extent upsets the theory that her legal existence is suspended during coverture. Their unity, his headship, his power and influence over her, are facts as distinctly recognised in the statutes as in the common law. Therefore, she cannot convey or encumber her property, save as authorized by statute; and very rarely, if at all, will her silence or acts in presence of her husband operate as an estoppel. Nothing can be more natural than that she will lend her money to her husband, and that he will give her a security for it whenever he sees financial embarrassment approaching. Such loans and securities are sanctioned by numerous decisions. She has the same right to loan to him as to a stranger; it is as lawful for him to secure that loan as any other. Strangers may sue him and obtain judgment adversely—his wife cannot. The law permits an insolvent debtor to give judgments to his creditors as he prefers. An honest judgment, voluntarily given by a husband to secure a debt owing to his wife, is just in law, and he who denounces the act as wrong in morals, must take a singular view of the promptings of affection and interest. Who could be more worthy his preference than she? And for whom could he feel greater concern? Until the legislature changes the law, these loans will be made and securities given. Her property vests in her as her separate estate; and the husband's is his separate estate. In view of their respective rights of property, why should her judgment be postponed to one who loaned him money, though he used it to improve his land. Were a stranger holding a judgment in the place where Mrs. Burns's stands. he would take the money. Hers is equally meritorious. For prevention of fraud, clear and satisfactory proof of a wife's claim against her husband is exacted in a degree not required of others, but when established she is entitled as another would be.

The association claims the money raised by sale of Burns's land in virtue of the mortgage given to secure money he borrowed. It cannot tend to defeat the judgment of Harriet Burns to give a detailed description of the parts of the mortgage—one, in form, an absolute conveyance, the other a defeasance—when, if it be not a mere mortgage, for that reason, it cannot take a dollar of the fund. The rights and disabilities of married women, except as secured or removed by statutes, remain as at common law. We fail to discover, in the facts found by the auditor, an act of Harriet Burns which estops her from demanding and receiving the money due on her judgment. To hold that anything she did is an equitable estoppel, as between her and the mortgagee, would be to assert a principle

[Lahr's Appeal.]

most dangerous to the rights of married women, unsupported by reason or precedent.

As distribution was made, the question of costs did not affect the appellant.   Her judgment ought not to be prejudiced by costs accrued on a posterior lien which were unnecessary to affect the sale : Fry's Appeal, 26 P. F. Smith 82.   Costs on writs, set aside for cause or by consent, she not being in fault or a party consenting, cannot be paid out of money belonging to her.   Allowance of $44,50 is said to be conceded, which sum seems to include a portion for which she is not liable.

> Decree reversed, and it is now considered and decreed, that $44.50 be paid on costs of suit, as per auditor's statement; that the costs of audit and respective amounts due on the three judgments, anterior to judgment No. 516, of March Term 1876, Elias Lahr for use of Harriet Burns, be paid as per auditor's report; and that the balance of the fund, $271.32, be appropriated to said judgment, in favor of Elias Lahr for use of Harriet Burns.   Costs of this appeal to be paid by the appellees.